

## NUMBER 13-20-00349-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

CALLIE RENEE INMAN,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

### On appeal from the 56th District Court
### of Galveston County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Justice Tijerina**

Appellant Callie Renee Inman pleaded guilty to criminally negligent homicide, a state jail felony. *See* TEX. PENAL CODE ANN. § 19.05. The trial court placed her on deferred adjudication community supervision. Following the State's motion to adjudicate guilt, the trial court found the allegations in the State's motion to be true, adjudicated guilt, revoked Inman's community supervision, and assessed punishment at eight years' imprisonment.

By four issues, Inman argues that: (1) the trial court committed reversible error by depriving her of her Confrontation Clause rights and admitting inadmissible testimony; (2) the evidence is insufficient to support the trial court's finding that she violated the terms of her community supervision; (3) her trial counsel rendered ineffective assistance; and (4) the trial court erred by failing to grant her motion for new trial. We affirm.[1]

## I. BACKGROUND

The State charged Inman with intoxication manslaughter and manslaughter.[2] Pursuant to a plea agreement with the State, Inman pleaded guilty to criminally negligent homicide. On July 20, 2015, the trial court deferred adjudication and placed her on community supervision for five years.

On May 17, 2019, the State filed an amended motion to adjudicate guilt alleging that Inman violated the conditions of her community supervision by: (1) committing the offenses of possession of marijuana and possession of a controlled substance; (2) leaving Galveston County without permission; (3) admitting to using marijuana via brownie ingestion and possessing marijuana; (4) testing positive for THC, opiates, marijuana, and benzodiazepines, and (5) failing to report to drug tests on January 24, 2019, and April 29, 2019.

The trial court held a hearing on June 18, 2020. Viviann Boyer, mental health

---

[1] This appeal was transferred to this Court from the Fourteenth Court of Appeals in Houston by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2] The indictment alleged that Inman was driving while intoxicated when she collided with a motorcycle, thereby killing a retired police officer and injuring his wife.

2

coordinator for Chambers County, testified that on April 12, 2017, Inman tested positive for marijuana and claimed "she un[know]ingly ate a bite of the brownie . . . around the middle of March that had marijuana in [it]." Boyer further stated that on May 5, 2018, Inman "admitted using of T.H.C" and on May 8, 2018, Inman again tested positive for marijuana.

Texas Department of Public Safety Trooper Daniel Hebert testified that he was on patrol on February 23, 2019, when he observed a vehicle pass him with a piece of paper obscuring the license plate. Trooper Hebert made a traffic stop, and he smelled an odor of marijuana permeating the vehicle. He observed Inman in the driver's seat and two other highly intoxicated occupants, her brother and his girlfriend, Sadie Paschall. Trooper Hebert's dashcam video was admitted into evidence. In the video, the officer can be seen recovering a white purse and a red purse from the stopped car. He located the red purse in the driver's side of the vehicle. When Trooper Hebert asked whom the red purse belonged to, Inman immediately raised her hand and then placed her hands behind her back. Inside the purse, Trooper Hebert found a prescription bottle with Inman's name on it and marijuana inside. He asked her if the red purse was hers and Inman responded, "Yes, but everything was just thrown in there."

Galveston County Community Supervision and Corrections Department Officer Alexandra Hon testified that Inman was supervised in both Galveston County and Liberty County. According to Inman's casefile, which was admitted into evidence, on January 24, 2019, Inman did not provide a drug test because the "quantity provided was not sufficient," and on April 29, 2019, she failed to report to a drug test. Officer Hon stated that Inman

3

left Texas without permission to attend a rehab facility in Louisiana. On May 28, 2019, Inman told Officer Hon that she left Texas "because somebody else had told her it was okay." According to Officer Hon, "it was suspected that [Inman] was abusing her prescription medication," and on May 28, 2019, Inman "admitted to [Officer Hon] that she had begun using drugs again due to her mental state."

Regarding the February 23, 2019 incident, Paschall testified that the red purse and the marijuana inside it belonged to her. According to Inman, she took the blame to prevent Paschall going to jail because Paschall "wasn't in her right mind. So I just took it. And I figured when [Paschall] got in her right mind she could possibly fix it, and she has chosen to do that." Inman denied she possessed marijuana: "Yeah, I was using [Paschall's] purse at the time but it was her purse and her weed."

Regarding the failed drug tests, Inman denied using marijuana or THC during her period of community supervision. She stated that she merely took "one bite" of the brownie, but she thought it contained "CBD" not marijuana. She further stated that Boyer was mistaken regarding Inman's use of THC because Inman did not "fail a drug test for Ms. Viviann Boyer."

Inman further testified that there was a misunderstanding about her traveling to Louisiana because although her community supervision officer did not tell her specifically whether she could travel to Louisiana, her officer told her stepfather that she was allowed to leave the state. Regarding the failed drug test on January 24, 2019, Inman explained "I think that might have been a misunderstanding on [the officer's] part because I did show up."

4

The trial court revoked Inman's community supervision, adjudicated her guilty of criminally negligent homicide and sentenced her to eight years' incarceration. Inman filed a motion for new trial alleging the State failed to prove she violated the terms of her community supervision. It was overruled by operation of law. This appeal followed.

## II.    CONFRONTATION CLAUSE

By her first issue, Inman argues the trial court deprived her of her "Confrontation Clause rights and prejudic[ed her] through the introduction of otherwise inadmissible testimony." The State asserts that Texas courts have held confrontation rights are not implicated in revocation proceedings. We agree with the State.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Admission of hearsay statements made by a non-testifying declarant violates the Sixth Amendment if the statement was testimonial, and the defendant did not have the opportunity to cross-examine the witness. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004); *Wall v. State*, 184 S.W.3d 730, 734 (Tex. Crim. App. 2006). However, several Texas courts have held that the right to confrontation under the Sixth Amendment does not apply during revocation proceedings. *See Olabode v. State*, 575 S.W.3d 878, 881 (Tex. App.—Dallas 2019, pet. ref'd) ("This Court has concluded the right to confrontation under the Sixth Amendment does not apply during revocation proceedings."); *Sabella v. State*, 578 S.W.3d 137, 142 (Tex. App.—Texarkana 2019, no pet.); *Mauro v. State*, 235 S.W.3d 374, 375–76 (Tex. App.—Eastland 2007, pet. ref'd); *Trevino v. State*, 218 S.W.3d

5

234, 239 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Diaz v. State*, 172 S.W.3d 668, 669 (Tex. App.—San Antonio 2005, no pet.); *Smart v. State*, 153 S.W.3d 118, 121 (Tex. App.—Beaumont 2005, pet. ref'd) *see also Corona v. State*, No. 14-17-00821-CR, 2019 WL 1768598, at *3 (Tex. App.—Houston [14th Dist.] Apr. 23, 2019, no pet.) (mem. op., not designated for publication) ("A community supervision revocation hearing is not part of a criminal prosecution.").

Inman contends we should deviate from this established precedent because the court of criminal appeals has yet to consider this issue. However, we find this argument unavailing, as the Fourteenth Court of Appeals "has consistently held in light of the Confrontation Clause's focus on criminal prosecutions, that the clause does not apply to post-conviction proceedings." [3] *Trevino,* 218 S.W.3d at 239; *see also Corona*, WL 1768598, at *3. Accordingly, we overrule Inman's first issue.

### III.   SUFFICIENCY OF THE EVIDENCE

By her second issue, Inman argues that there is insufficient evidence supporting the following violations: (1) possessing marijuana on February 23, 2019; (2) leaving Galveston County without permission; (3) admitting, in writing, to ingesting marijuana via brownie in mid-March; and (4) failing to report to a drug test on April 29, 2019.

### A.   Standard of Review & Applicable Law

We review a trial court's order revoking deferred adjudication community supervision for an abuse of discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim.

---

[3] This case was transferred from our sister court in Houston, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

App. 2013) (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)). The trial court has discretion to revoke community supervision when the State proves by a preponderance of the evidence that the defendant violated at least one condition of community supervision. *Id.* at 864–65. "[A] preponderance of the evidence" means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of [community supervision]." *Id.* at 865 (citing *Rickels*, 202 S.W.3d at 764). In determining the sufficiency of the evidence to sustain a revocation, we view the evidence in the light most favorable to the trial court's ruling. *Id.* The trial judge serves as the sole judge of credibility of the witnesses and in assessing the weight of the testimony. *Id.*

## B. Discussion

Here, Trooper Hebert testified that he found marijuana inside a red purse, which Inman admitted at the scene belonged to her, and there was a strong odor of marijuana permeating from the vehicle. The trial court viewed Trooper Hebert's dash camera video. Although Inman testified at the revocation hearing that the purse was not hers and she was merely borrowing it, the trial judge serves as the sole judge of credibility of the witnesses and could have disbelieved her hearing testimony. *See id.* Thus, the trial court could have reasonably inferred by a preponderance of evidence that Inman was in possession of marijuana on February 23, 2019. Accordingly, we conclude there was sufficient evidence to support this finding.

Furthermore, there was evidence that Inman tested positive for marijuana on April 12, 2017, according to her casefiles and testimony from the State's witnesses. When the

7

State asked Inman whether she "admitted to probation in writing something about marijuana via brownie," Inman responded, "Yes, sir. But I told her it was a brownie I got from the smoke shop . . . . So when I failed the test I did tell her that I did eat a brownie." Thus, Inman admitted to ingesting a brownie from a smoke shop shortly before she failed the April 12, 2017 drug test. Accordingly, there is sufficient evidence to support this violation. *See Olabode*, 575 S.W.3d at 880.

Lastly, Officer Hon unequivocally testified that Inman did not have permission to travel to Louisiana. As the sole judge of the witness's credibility, the trial court could have credited this testimony and revoked Inman's community supervision for this reason alone. *See Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009); *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012) (providing that that proof of a single violation of community supervision will support the trial court's decision to revoke); *Allbright v. State*, 13 S.W.3d 817, 819 (Tex. App.—Fort Worth 2000, pet. ref'd).

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude there was sufficient evidence that Inman violated the terms of her community supervision. *See Hacker*, 389 S.W.3d at 865. Therefore, the trial court did not abuse its discretion in revoking Inman's community supervision based on these violations, and we overrule Inman's second issue. *See id.*

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

By her third issue, Inman argues that her trial counsel was ineffective during the revocation proceeding. Specifically, she asserts that her trial counsel: (1) was unprepared for her revocation hearing, (2) was unable to confer with her prior to the final hearing, and

8

(3) failed to communicate with her during the final hearing.

## A.    Standard of Review & Applicable Law

To prevail on a claim of ineffective assistance, an appellant must prove by a preponderance of the evidence that (1) trial counsel's performance was deficient by falling below an objective standard of reasonableness and (2) trial counsel's deficiency caused the appellant prejudice such that there is a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). An appellant must prove both prongs of the *Strickland* test by a preponderance of the evidence. *See Perez*, 310 S.W.3d at 893.

Often a claim of ineffective assistance may not be addressed on direct appeal because the record is not sufficient to conclude that trial counsel's performance was deficient under the first *Strickland* prong. *See Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005); *see also Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). "Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation." *Salinas*, 163 S.W.3d at 740. "To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quotation omitted). If trial counsel has not had an opportunity to explain its actions, we may not find deficient performance unless the conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*,

9

187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quotation omitted).

**B.    Discussion**

Although Inman filed a motion for new trial, she did not allege in that motion that her trial counsel was ineffective in representing her at the revocation proceeding, and there is no record of a hearing on that motion. *See Salinas*, 163 S.W.3d at 740. Thus, this record is insufficient to conclude that trial counsel's performance was deficient under the first *Strickland* prong. *See Andrews*, 159 S.W.3d at 103; *Goodspeed*, 187 S.W.3d at 392.

Moreover, Inman does not explain, much less prove by a preponderance of the evidence, that a reasonable probability exists that, absent trial counsel's alleged errors, the outcome of the revocation proceeding would have been different. *See Strickland*, 466 U.S. at 694. Here, the trial court heard Trooper Hebert testify regarding finding marijuana in Inman's purse after smelling an odor of marijuana emanating from the vehicle. In the video, Trooper Hebert can be seen recovering marijuana from a container with Inman's name on it, and Inman admitted the red purse belonged to her. Admitted into evidence were Inman's community supervision reports reflecting that she tested positive for marijuana on April 12, 2017, and failed another drug test on May 5, 2018. Moreover, Boyer and Officer Hon testified that Inman admitted to using drugs on May 5, 2018. Inman's casefile also reflected that she failed to report for drug testing on April 29, 2018. Inman further testified that she failed the April 12, 2017 drug test because she ingested a brownie containing marijuana that she purchased from a smoke shop. *See Smith*, 286 S.W.3d at 342–44 (finding no prejudice from the failure to adduce evidence that related to only one of four violations of the conditions of community supervision because, even

assuming that the defendant could have successfully challenged one of the violations, the trial court was justified in revoking community supervision based on the other violations).

Considering the totality of the circumstances, we conclude that trial counsel's alleged errors do not undermine the confidence in the outcome of the revocation proceedings. *See Garcia*, 387 S.W.3d at 26; *Bessard v. State*, 464 S.W.3d 427, 429 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Inman has not established prejudice because the purported violations would have had no effect on the trial court's findings that Inman violated a condition of community supervision. Accordingly, we overrule her third issue.

## V.     MOTION FOR NEW TRIAL

By her last issue, Inman asserts that the trial court erred by failing to grant her motion for new trial.

### A.     Standard of Review and Applicable Law

A defendant has a right to move for a new trial. *Hamilton v. State*, 563 S.W.3d 442, 448 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). A defendant does not, however, have an "absolute right to a hearing on his motion for new trial." *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). "[A] hearing is not required when the matters raised in the motion for new trial are subject to being determined from the record." *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). We review a trial court's ruling on a motion for new trial under an abuse-of-discretion standard. *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020). We will reverse only if the trial court's ruling falls outside the zone of reasonable disagreement. *Smith*, 286 S.W.3d at 339.

11

**B.     Discussion**

On appeal, Inman asserts that her motion for new trial "points to new evidence that shows the State failed to prove one or more of the essential elements of the crime of possession of marijuana, mainly identity of the substance of marijuana in [her] possession." She attached a DPS lab submission form wherein Trooper Hebert submitted for analysis the following items he discovered from the red purse: clear plastic baggies containing a green leafy substance, multiple baggies containing one large white pill, three green pills, four small white pills, one yellow pill, one white capsule, three orange pills, six blue pills, one large bottle with liquid inside. According to Inman, this report contradicts Trooper Hebert's testimony that the "green leafy substance" was marijuana because the substance could have been hemp.[4] However, as previously discussed, we determined that there was sufficient evidence to revoke Inman's community supervision on other grounds. Thus, the DPS analysis request which Inman attached as "discovered evidence" is not a reasonable ground showing that Inman could potentially be entitled to relief because proof of a single violation will support the trial court's decision to revoke. *See id.* at 338–39; *Garcia*, 387 S.W.3d at 26. Therefore, the trial court did not abuse its discretion in failing to grant Inman's motion for new trial. *See Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006) (providing that a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial

---

[4] Inman did not support the motion for new trial with an affidavit setting forth the factual basis for the relief sought. *See Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009) (providing that the motion for new trial requires an affidavit specifically setting out the factual basis for the claim as a prerequisite to a hearing when the grounds listed in a motion for new trial are based on matters not already in the record).

12

court's ruling). We overrule her last issue.

## VI.   CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
10th day of March, 2022.